IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff-Respondent,

v.                                                    CIV 09-0219 JB/KBM
                                                CR   04-1978 JB

ROBERT MICHAEL HANRAHAN,

        Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION FOLLOWING EVIDENTIARY HEARING ON SOLE REMAINING ISSUE

On December 21, 2009, I held an evidentiary hearing on the sole remaining issue in this § 2255 habeas  matter – whether trial counsel denied Defendant Robert Hanrahan his constitutional right to testify.  *See Doc. 11* at 9-10.  I incorporate the factual background of my prior findings herein by reference.  *See id.* at 1-9.  The hearing was transcribed, and the transcript filed with the Clerk on January 13, 2010.  *See Doc.* 21 (hereinafter "*Transcript*").  As before, I refer to Mr. Hanrahan as "Petitioner."  Unless otherwise noted, all citations to "Doc." are the documents filed in this civil action and the page numbers refer to the CM/ECF pagination assigned to the document.

# I.  Waiver & Clarification

In my prior proposed findings, I noted that in both his "sworn" petition and an "unsworn" document, Petitioner asserted that trial counsel did not allow him to take the stand.  *Doc. 11* at 9-10.  I considered the *pro se* petition "sworn" because it concludes with the statement that "I certify this statement to be true and correct to the best of my knowledge under the penalty of perjury."  *Doc. 1-2* at 27.  The "sworn statement" led me, in an abundance of caution, to recommend holding an evidentiary hearing to compliance with the directives in *United States v. Duran-Salazar,* 307 Fed. App'x 209, 211 (10th Cir. 2009).  Presiding District Judge James Browning adopted the recommendation.  *See Doc. 12.*

Counsel for the United States essentially objected to the evidentiary hearing because the "sworn statement" is located on a page entitled "certificate of service."  *See Transcript* at 3-6.  First, I find that any objection was waived since the United States did not file any timely objections to my last set of proposed findings.  It is well-settled that failure to file objections waives appeal of the issue, and neither of the recognized exceptions to that "firm" rule are applicable here.  *E.g., Jones v. Salt Lake County,* 503 F.3d 1147, 1152 (10th Cir. 2007);  *Morales-Fernandez v. I.N.S.,* 418 F.3d 1116, 1119 (10th Cir. 2005); *see also e.g., In re Garcia,* 2009 WL 3089070 (10th Cir. 2009) (and citations therein).

Moreover, *pro se* pleadings are to be construed liberally, and Mr. Hanrahan did not use a court form for his petition. *See Docs. 1, 1-2.* His "sworn statement" comports with the federal statute for "unsworn declarations under penalty of perjury." 28 U.S.C. § 1746 ("I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)"). The statute does not require that the statement fall on any particular page, nor have I found a decision that imposes such a requirement. *C.f., Green v. Branson,* 108 F.3d 1296, 1302 (10th Cir. 1997) ("Here Green's complaint was accompanied by a statement by Green made under penalty of perjury, 28 U.S.C. § 1746, and thus may be treated as an affidavit."); *Hall v. Furlong,* 77 F.3d 361, 363 (10th Cir. 1996) ("The habeas petition which Mr. Hall signed was made under penalty of perjury in compliance with 28 U.S.C. § 1746, and thus had the force of an affidavit or sworn declaration."). Finally, even if the petition is unsworn, it is a defect that the Court may overlook. *Hem v. Maurer,* 458 F.3d 1185, 1201, n.6 (10th Cir. 2006), *citing Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) ("the defect [of an unverified petition] is one that the district court may, if it sees fit, disregard.")).

## II.  Overview Of Legal Standards

It is well-settled that a defendant has a constitutional right to take the witness stand in his or her own defense, *e.g., Rock v. Arkansas,* 483 U.S. 44, 51-53 (1987),

3

and that the decision lies with the defendant, and not counsel. *See e.g., Jones v. Barnes,* 463 U.S. 745, 751 (1983). Counsel has no authority "to prevent a defendant from testifying in his own defense, even when doing so is suicidal strategy." *Cannon v. Mullin,* 383 F.3d 1152, 1171 (10th Cir. 2004) (citing *United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983), *cert. denied,* 465 U.S. 1036 (1984)), *cert. denied,* 544 U.S. 928 (2005). To demonstrate ineffective assistance of counsel under the familiar two-part test of *Strickland*, a habeas petitioner must show both that: (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

The right to testify and *Strickland* standard intersect where trial counsel interferes in some way with a defendant's decision to testify. If counsel actually interferes with the right, for example, by prohibiting a defendant from testifying despite his or her wishes to the contrary, the first prong of *Strickland* is satisfied. *See, e.g., Cannon,* 383 F.3d at 1171 (" Such a dereliction of duty by counsel would satisfy the first prong of *Strickland*."); *United States v. Duran-Salazar,* 307 Fed. App'x 209, 211 (10th Cir. 2009) ("'[i]f [Duran-Salazar's] counsel deprived him of the constitutional right to testify in his own defense[,] [s]uch a dereliction of duty

4

by counsel would satisfy the first prong of *Strickland*.") (quoting *Cannon*).

There is also a "consultation" aspect to counsel's responsibilities with respect to the right to testify:

> Defense counsel should inform the defendant that he has the right to testify and that the decision whether to testify belongs solely to him. *See* [*United States v. Teague,* 953 F.2d 1525 (11ᵗʰ Cir.) (*en banc*), *cert. denied,* 506 U.S. 842 (1992)] at 1533-34.  Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant.  *See id.*

*Cannon,* 383 F.3d at 1171.  Thus, "if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary."  *Teague,* 953 F.2d at 1534.  Conversely, however, if counsel advises a client that "that it would be unwise and unnecessary for him to testify [and] rested the defense . . . believ[ing] that [defendant] had assented or acceded to her recommendation . . . . counsel's performance [i]s not constitutionally deficient."  *Teague,* 953 F.2d at 1535.[1]  Cases from the Tenth

---

[1]  *Teague* is often cited by the Tenth Circuit. *See, e.g., Cannon,* 383 F.3d at 1172; *Janoe,* 720 F.2d at 1161, n. 10; *Wesley v. Snedeker,* 284 Fed. App'x. 521, 526 (10ᵗʰ Cir. 2008), *cert. denied sub nom Wesley v. Janecka,* 129 S. C. 939 (2009); *United States v. Bailey,* 245 Fed. App'x 768, 771 (10ᵗʰ Cir. 2007), *cert. denied,* 128 S. Ct. 1286 (2008); *Aragon v. Tafoya,* 42 Fed. App'x 255, 254 (10ᵗʰ Cir.), *cert. denied,* 537 U.S. 1051 (2002); *United States v. Beers,* 110 Fed. App'x 53, 54 (10ᵗʰ Cir. 2004).

5

Circuit and this Court recognize the same principle.  For example, if a defendant is "influenced by her counsel's advice suggesting that she not testify . . . any such influence does not amount to ineffective assistance of counsel."[2]

The "accepting counsel's recommendation" principle is related to the issue of waiver.  It is equally-well settled that a defendant can waive the right to testify, so long as the waiver is "knowingly and voluntary."  *E.g., Florida v. Nixon,* 543 U.S. 175, 187 (2004) ( "A defendant . . . has the ultimate authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *United States v. Olano,* 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right."); *Backus v. Hartley,* 2009 WL 3138867 at * 3 (10th Cir. 2009) ("A waiver of the right to testify in one's own defense must be voluntary, knowing, and intelligent) (citing *Harvey v.*

---

[2]  *Underwood v. Massie,* 75 Fed. App'x 747, 749 (10th Cir. 2003) (citing as analogous support *Hooks v. Ward,* 184 F.3d 1206, 1219 (10th Cir. 1999) (counsel testified at evidentiary hearing that he did not call his client to testify at the penalty phase because counsel "didn't think he would make good witness," and did not "remember ordering him not to testify or telling him that he would not be allowed to testify [or] him insisting on testifying" held not ineffective); *see also, e.g., United States v. Vázquez-Pulido,* 45 Fed. App'x 833 (10th Cir. 2002) (affirming this Court where, "[b]ased on the testimony she heard at the evidentiary hearing and her assessment of the witnesses' credibility, the magistrate judge found that defendant was aware of his right to testify, that trial counsel always advised his clients that they had the right to testify and did not deviate from this practice with defendant, that counsel recommended that defendant not take the stand but did not order defendant not to testify, that defendant trusted his counsel and took his advice, and that defendant did not insist that he be called to testify after he heard his brother's testimony."); *Patscheck v. Snodgrass,* CIV 05-190 (Doc. 22 at 12: "Petitioner may have been influenced by her counsel's advice suggesting that she not testify, but any such influence does not amount to ineffective assistance of counsel.") (citing *Hooks*).

*Shillinger,* 76 F.3d 1528, 1536 (10th Cir.), *cert. denied,* 519 U.S. 901 (1996)),

*petition for cert. filed 11/2/09.*  As the Tenth Circuit summarized in an earlier

unpublished decision:

> In drawing the "difficult line . . . between earnest counseling and [the]
> overt coercion" which amounts to ineffective assistance, courts
> consider:
>
>> (1) whether the defendant knew about his constitutional
>> right to testify, and if not, whether he was informed by
>> counsel; (2) the competence and soundness of defense
>> counsel's tactical advice, *i.e.*, whether counsel presents
>> the defendant with sufficient information to permit a
>> meaningful voluntary waiver of the right to testify; and
>> (3) any intimidation or threatened retaliation by counsel
>> relating to the defendant's testimonial decision.
>
> *Lema v. United States,* 987 F.2d 48, 52-53 (1st Cir. 1993) (citations
> omitted).

*Wimberly v. McKune,* 1998 WL 115953, ** 3-4  (10th Cir. 1998) (footnote

omitted).  More recently, the Tenth Circuit has indicated that waiver can be

inferred by a defendant's inaction:

> The right to testify on one's own behalf at a criminal trial is essential
> to due process of law. . . .  "The decision whether to testify lies
> squarely with the defendant; it is not counsel's decision." . . .  A trial
> court has no duty to explain to the defendant, however, that he has a
> right to testify or to verify that a defendant who is not testifying has
> waived the right.  *See United States v. Ortiz,* 82 F.3d 1066, 1069-70 &
> 1069 n. 8 (D.C. Cir. 1996) (collecting cases); *cf. United States v.
> Janoe,* 720 F.2d 1156, 1161 (10th Cir. 1983).  To ensure his
> constitutional rights, "a defendant must alert the trial court that he
> desires to testify or that there is a disagreement with defense counsel

regarding whether he should take the stand." *United States v. Webber,*
208 F.3d 545, 550 (6th Cir. 2000) (quotation omitted); *Janoe,* 720 F.2d
at 1161 n. 9 (holding that right to testify not denied where, inter alia,
"defendant made no objection to his attorney's statements that
defendant would not testify and made no request to testify").  "When a
defendant does not alert the trial court of a disagreement [with his
counsel regarding his right to testify], waiver of the right to testify
may be inferred from the defendant's conduct."  *Webber,* 208 F.3d at
550.

*United States v. Williams,* 139 Fed. App'x 974, 976 (10th Cir. 2005) (citations to

*Rock* and *Cannon* omitted).[3]

   If this inference of waiver was not permissible, it would impose a duty of

constitutional dimension on the Court and counsel that has never been recognized

by the Supreme Court.  At the very least, when a defendant's first and only

suggestion he wanted to testify and was prevented from doing is brought years

later in habeas proceedings, it reflects adversely on his credibility.[4]

---

[3]  *See also Underwood*, 75 Fed. App'x a 749 ("The transcript indicates that her trial
counsel announced in open court at the close of the state's case that he would not be calling
petitioner to testify. The record does not reflect any objection by petitioner to this assertion at the
close of the state's case, nor does it indicate she raised any objection at the close of the defense
case or at any other time.  *See . . . Janoe . . .* (holding that right to testify not denied where
"defendant made no objection to his attorney's statements that defendant would not testify and
made no request to testify")).

[4]  *E.g., Hodge v. Haeberlin,* 579 F.3d 627, 639-40 (6th Cir. 2009) ("Notably, Hodge has
not stated that he was unaware of his right to testify or that he was somehow prevented from
seeking the court's assistance in overcoming counsel's allegedly unilateral decision. . . .  [W]hen
a tactical decision is made not to have the defendant testify, the defendant's assent is presumed
. . . .  Indeed, "[b]arring any statements or actions from the defendant indicating disagreement
with counsel or the desire to testify, the trial court is neither required to *sua sponte* address a
silent defendant and inquire whether the defendant knowingly and intentionally waived the right
to testify, nor ensure that the defendant has waived the right on the record.") (internal quotations

# III.  Analysis

Two snippets of sentences of the 60-page petition were the basis for my recommendation to hold an evidentiary hearing – the characterization of "ground seven" as "ineffective assistance of counsel when counsel denied defendant the opportunity to take the stand in his own defense at trial" and the assertion that counsel did not put Petitioner "on the stand himself."  *Doc. 11* at 10.  As recounted in more detail in my first set of proposed findings, Petitioner testified at his first trial which ended in a mistrial.  At the second trial, Petitioner did not take the

---

and citations omitted); *Arredondo v. Huibregtse,* 542 F.3d 1155, 1165-66 (7th Cir. 2008) ("As the district court pointed out, the Supreme Court of the United States never has held that a trial court must engage in a personal colloquy with a defendant to determine whether he wishes to testify or that a waiver of the right to testify must occur formally on the record.  Indeed, in . . . *Brimberry* . . . we held that courts have no affirmative duty to determine whether a defendant's silence is the result of a knowing and voluntary decision not to testify.") (internal quotations and citations omitted), *cert. denied,* 129 S Ct. 968 (2009); *United States v. Hayes,* 56 Fed. App'x 294, 295 (8th Cir. 2003) ("A defendant who does not alert the trial court that he wishes to testify when his attorney rests without calling him to the stand has waived his right to testify. . . . *Bernloehr* . . . In the present case, Hayes did nothing at trial to signal the District Court that he disagreed with his trial counsel's decision to rest without Hayes's testimony.  Under *Bernloehr,* Hayes is barred from claiming he was denied his right to testify.  Even if *Bernloehr* were not controlling, the record is replete with evidence to support a finding that Hayes was aware of, and knowingly and voluntarily waived, his right to testify.  This evidence includes Hayes's previous experience with the criminal-justice system and the testimony of his trial counsel.") (internal citations omitted); *United States v. Leggett,* 162 F.3d 237, 248 (3rd Cir. 1998) ("The bare facts of the matter are these:  (1) the day before the defense rested its case, Leggett and his attorney disagreed about Leggett's taking the stand; (2) one day later, at the close of evidence, Leggett's attorney indicated that he had no further evidence to present – which implicitly meant that Leggett would not testify; and (3) Leggett did not then and does not now maintain that his attorney acted against his wishes. Based on these facts, the district court received no indication that Leggett was coerced by his attorney to remain silent.  The district court could only have assumed that, in the 24-hour period leading to the close of evidence, Gardner had convinced Leggett that testifying was not in his best interests."), *cert. denied,* 528 U.S. 868 (1999).

stand, but the substance of his testimony from the first trial was introduced over his counsel's objection by the prosecution in its case-in-chief. The case agent read without inflection what was identified to the jury as a "prior statement" by Hanrahan. Petitioner maintains that once this testimony was read into the record, he told his attorney that he wanted to take the stand and testify.

Petitioner's trial attorney – Ms. Jane Greek – testified that she could not recall the exact details of her conversations with Petitioner. However, she has had a long career as a criminal defense trial attorney including more than 12 years as an Assistant Federal Public Defender ("AFPD") here in Las Cruces. Given my familiarity with the criminal workloads before this Court for the past decade and the workloads of Federal Public Defenders like Ms. Greek, I would not expect her to remember those sorts of details from events that occurred months prior to the evidentiary hearing, must less from a case tried in the Summer and Fall of 2005.

Ms. Greek clearly testified about trial strategy in Petitioner's case, the advice and preparation she would have provided him, as well as her usual trial practices and advice in criminal cases when a client desires to testify. She testified that though she may strongly advise a client against taking the stand, she would not preclude a client who wanted to do so, because a defendant's right to testify, "is among the most fundamental of rights, if not the most fundamental." *Transcript* at

10

35.  Moreover, in her seventeen years as a criminal defense attorney, no other

defendant has ever claimed that Ms. Greek denied him of the right to take the stand

against the his wishes.  *Id.*

Ms. Greek specifically noted that although she and Petitioner had discussed

having Hanrahan take the stand, she would have strongly advised Petitioner about

the dangers of impeachment once Judge Browning's ruled that Hanrahan's

testimony from the first trial was admissible.  *Transcript* at 33-34.  At the first trial,

the prosecution's cross-examination of Hanrahan and other witnesses was quite

limited.  If he taken the stand in the second trial, the "potential was great" that the

prosecution could illicit inconsistencies with that prior testimony that could

undermine his credibility.  *Id.* at 31.  Also, Judge Browning had ruled at the second

trial that the United States would be able to impeach Hanrahan with an additional

prior felony conviction that the first jury never heard about.  *Transcript* at 21.

And, as Petitioner in essence conceded at the evidentiary hearing, the core of

what he would have testified to at the second trial was already before the jury.  He

simply felt that he could have told "[his] story better to the jury" than did the case

agent when he read Hanrahan's prior testimony:

> There was no doubt.  I mean, it worked in the first trial,
> and in order for me to – in order for the jury to know me,
> then I could put my own emotions and express myself in
> my own manner and not as Mr. Ortiz would.  He was a

> special – he was the officer in my case, so therefore he
> was working with [the AUSA] and not on my side.

*Transcript* at 10-11.  Petitioner elaborated that "the jury could have got (sic) to

know me just a little bit better instead of Mr. Ortiz stating what he stated with no

feeling or expression whatsoever." *Transcript* at 16.  Hanrahan acknowledged,

however, that if he had taken the stand, his testimony "wouldn't be contradictory,

whatsoever" from that in his first trial.

   Finally, Hanrahan is no stranger to the criminal justice system and has

undoubtedly been advised of both his right to testify or remain silent on many

occasions.  Indeed, he remembers that Ms. Greek so advised him before the start of

the trial.  *Transcript* at 12.  Clearly Ms. Greek believed that she had convinced him

that it was too risky to testify because she indicated that if she had needed more

time to discuss the issue of taking the stand with Petitioner, she would have

requested a recess.  *See Transcript* at 27-39.

   I found her testimony entirely credible particularly since, despite his waiver

of privilege, Ms. Greek's discomfort at having to testify about her client was

palpable.  Had she been able to truthfully support his habeas claim, I have no doubt

she would not have hesitated to do so.

   Conversely, at the evidentiary hearing, Petitioner testified that Ms. Greek

"gave up" his right to testify on the stand against his wishes.  *Transcript* at 20.  I

12

find this rendition of the facts incredible for several reasons, not the least of which is its inconsistency with Ms. Greek's general practices.  There are other independent reasons, however.

First, having observed Petitioner's demeanor on the stand, some portions of his testimony rang true and others false, particularly on cross-examination.  I believe Hanrahan did initially want to take the stand and expressed that to his counsel.  I also believe that Ms. Greek strongly advised him against it warning that "the government needs (sic) no rocks unturned" if he was subject to cross-examination.  *Transcript* at 24.

On the other hand, I am convinced that Hanrahan chose to heed his attorney's warning.  He acknowledged that Ms. Greek had told him that she wouldn't be putting him on the stand, and that "I put my trust in her because she's a professional with the experience of being a trial attorney, and I surely did not want to make a scene in front of the jury."  *Transcript* at 13.  Moreover, Ms. Greek had co-counsel present at the trial, and Petitioner concedes that he never discussed with Ms. Mandel any displeasure with Ms. Greek's trial strategy during the proceedings.  Petitioner also made absolutely no effort to alert the Court to this alleged disagreement about strategy until these habeas proceedings.  If that does not constitute a waiver as a matter of law, as noted above, it certainly reflects

13

adversely on his credibility in my view.

Second, Petitioner's testimony was inconsistent with one of the key factual assertions in the *pro se* petition.  I can overlook that a litigant might want to take inconsistent legal positions, and I can accept the assertion that Petitioner had assistance in drafting his *pro se* petition.  I cannot conclude, however, that whoever helped him alone concocted the assertion that Petitioner "***did not*** take the stand in this new trial . . . by way of constitutional right . . . Hanrahan chose not to testify in this new trial." *Doc. 1-2* at 25 (emphasis original).

Thus, Petitioner has not met his burden of showing counsel's conduct was deficient.  That is sufficient to end the inquiry and deny habeas relief.  Even if the first prong were established, however, Petitioner still would nevertheless be required to show prejudice.[5]  Just as counsel's conduct is not viewed from hindsight, under the *Strickland* inquiry

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.  An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice,

---

[5]  Alleged attorney interference with the right to testify is not a "*per se*" violation warranting relief.  *See, e.g., Battle v. Sirmons,* 304 Fed. App'x 688, 693 (10th Cir. 2008) ("If Battle were prevented from testifying in his own defense by counsel, he would satisfy the *Strickland* deficient performance prong.  But he must also show prejudice to satisfy *Strickland.*"), *and United States v. Beers,* 110 Fed. App'x  53, 55 (10th Cir. 2004) ("Even if counsel overrode his desire to testify, however, Mr. Beers must show prejudice, which is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'").

> "nullification," and the like.  A defendant has no
> entitlement to the luck of a lawless decisionmaker, even
> if a decision cannot be reviewed.  The assessment of
> prejudice should proceed on the assumption that the
> decisionmaker is reasonably, conscientiously, and
> impartially applying the standards that govern the
> decision.  It should not depend on the idiosyncracies of
> the particular decisionmaker, such as unusual
> propensities toward harshness or leniency.

*Strickland,* 466 U.S. at 694-95.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Alternatively, then, I find that there is no reasonable possibility Petitioner's testimony would have altered the result in this case.  The substance of his proposed testimony was before the jury at the second trial.  Hanrahan would have been subject to rigorous cross-examination with additional discrediting (yet another prior felony conviction) and could have been impeached with even the smallest of discrepancies with the prior testimony.  Reasonable jurors would have perceived his self-serving testimony as I have.  Thus, I also find that Petitioner fails to meet the second prong of *Strickland.*

Wherefore,

**IT IS HEREBY RECOMMENDED** that habeas relief be denied and this action dismissed.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____

UNITED STATES MAGISTRATE JUDGE